# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE RAY ALLEN,<br><br>    Petitioner,<br><br>    v.<br><br>D. SAMUEL,<br><br>    Respondent. | Case No. 1:21-cv-01088-DAD-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Clarence Ray Allen is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner asserts instructional error claims. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

On August 14, 2018, Petitioner was convicted by a jury in the Fresno County Superior Court of carjacking (count 1), second-degree robbery (count 2), and assault with a firearm (count 5). The jury found true the special allegations regarding Petitioner's personal use of a firearm during the commission of the offenses. (CT[1] 256–58). Petitioner was sentenced to five years for the carjacking plus ten years for the firearm enhancement. Petitioner's sentences for counts 2 and 5 were stayed. (CT 268). On March 24, 2021, the California Court of Appeal, Fifth Appellate

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on September 8, 2021. (ECF No. 11).

District affirmed the judgment. People v. Allen, No. F078600, 2021 WL 1113263 (Cal. Ct. App. Mar. 24, 2021). On June 9, 2021, the California Supreme Court denied Petitioner's petition for review. (LD[2] 8).

On July 14, 2021, Petitioner filed the instant federal habeas petition raising the following claims for relief: (1) the trial court erroneously instructed the jury with CALCRIM No. 376 and provided the jury with an invalid "alternate theory of guilt" for the carjacking and robbery; and (2) the trial court erroneously failed to instruct the jury on receiving stolen property. (ECF No. 1). Respondent filed an answer, and Petitioner filed a traverse. (ECF Nos. 12, 13).

## II.

## STATEMENT OF FACTS[3]

> On March 28, 2018, friends, T.R. and P.G., were chatting inside P.G.'s parked vehicle with the windows open just outside of a public park. T.R. testified she was sitting on the passenger's side, and P.G. was on the driver's side. At around 4:30 p.m., a man with burgundy/reddish colored dreads, wearing a red bandana around his neck and all red clothing, approached the passenger side of the vehicle. T.R. had never seen the man before, but identified him as appellant from a photo lineup shown to her by law enforcement the following day and also identified appellant during trial. Appellant leaned into the vehicle and asked if they had any change. The encounter lasted fewer than five minutes, and appellant left. T.R.'s purse was in the vehicle, which contained her ID and other personal items, and her phone was on her lap. The items were visible from where appellant was standing.
>
> After appellant walked away from the vehicle, T.R. observed appellant walk up to another man, who she later identified as Jerry Whitehead from a photo lineup shown to her by law enforcement, and who was wearing a spandex cap, a black shirt, and black shorts.
>
> Whitehead approached the vehicle, asked P.G. if he was from the area, and said he would be back in 15 minutes. He then walked off with appellant. T.R. and P.G. began talking about what had just happened, and before this conversation ended, Whitehead approached the passenger's side of the vehicle and pointed a rifle directly at T.R.'s face. T.R. observed appellant wearing the red bandana and a red shirt on the driver's side of the vehicle pointing a silver handgun at P.G.
>
> P.G. had his hand on the ignition as if he were going to start the vehicle, and appellant told him not to move. P.G. and T.R. were told to exit the vehicle; they complied and went to the sidewalk. T.R. left her purse and phone in the vehicle, and P.G.'s belongings were in the vehicle as well. Appellant got in the driver's seat, Whitehead got into the passenger seat, and they drove off.

---

[2] "LD" refers to the documents lodged by Respondent on September 8, 2021. (ECF No. 11).
[3] The Court relies on the California Court of Appeal's March 24, 2021 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

On cross-examination, T.R. was presented with footage from law enforcement's body camera taken within an hour of the incident of her explaining what had happened to the investigating officer. In the footage, T.R. tells the officer a man in a red shirt and reddish-brown dyed dreads came up to the vehicle; she saw him leave to talk to another individual, a man in a black shirt with long dreads. The man in black then approached and said they would be back in 15 minutes. T.R. told the officer that the guy with the long dreads came back with another individual about 15 minutes later. T.R. said the guy with the red dreads and red clothing "didn't come back" and that the man with the handgun had dark brown or black dreads and was wearing a mask. After viewing the video, T.R. testified the man with the handgun did not have a mask on and had dreads with burgundy, reddish-brown tips. T.R. said that when she mentioned the dark brown or black dreads, she was referring to Whitehead, not the man with the handgun. She did not recall telling an officer the man in red never came back.

The day following the incident, a sheriff's deputy was dispatched to respond to an area where P.G.'s vehicle was sighted. Appellant had been observed driving the vehicle and was present at the scene. The deputy performed a search of appellant and found P.G.'s driver's license in his front pocket. He then turned it over to Fresno Police Department personnel.

Fresno Police Department Officer Kham Xiong, lead investigator of the case, testified he reviewed a nearby homeowner's security footage, which showed an area near the scene of the crimes. Xiong identified two subjects at 4:34 p.m.—one wearing blue jean shorts and a black sweater with white stripes with long dreads and another wearing black pants and a red shirt with short collar-length dreads—walking away from where the vehicle was parked but looking back in that direction. The man with the shorter dreads had "short dreads just like [appellant]" and the dreads had a "slight hue of a different color" with "a reddish or maybe like an orange tint." At 4:47 p.m., the subjects appear on the footage again walking toward the vehicle; they were both wearing dark clothing. The subject Xiong believed was appellant was wearing a red bandana around his neck. It appeared to Xiong appellant moved the red bandana to cover the lower part of his face. Xiong did not see an individual dressed in all red in any of the footage he reviewed.

When T.R. was shown the security camera footage during her testimony and it was pointed out to her that the individual she identified as appellant was wearing black when he came back, rather than red as she testified, she stated she was not paying attention to what he was wearing when he came back. She was focused on his red bandana and red dreads and recognized his voice and face.

Xiong testified when the vehicle was recovered, it was searched and a red bandana was found in the sunglass storage area of the vehicle.

Xiong interviewed appellant at police headquarters on March 29, 2018. The interview was recorded and played for the jury. In the interview, appellant denied involvement in the crime and said he was not present at the park when the crimes took place. Appellant stated on the morning of March 28, he asked his friend, Steve William, to borrow his vehicle. Appellant had asked William if the vehicle was stolen, and William responded it was not.

Allen, 2021 WL 1113263, at *1–2.

///

3

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Fresno County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 576 U.S. 257, 268–69 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 576 U.S. at 269. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court

decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. Generally, federal courts "look through" unexplained decisions and review "the last related state-court decision that does provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision

adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Id.

"When a federal claim has been presented to a state court[,] the state court has denied relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits and there is no reasoned lower-court opinion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## DISCUSSION

### A. CALCRIM No. 376 Instruction

In his first claim for relief, Petitioner asserts that the trial court erroneously instructed the jury with CALCRIM No. 376 and provided the jury with an invalid "alternate theory of guilt" for the carjacking and robbery based on two essential facts instead of each statutory element of the offenses. (ECF No. 1 at 5).[4] Respondent argues that the state court's rejection of this claim was reasonable. (ECF No. 12 at 5–8).

---

[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

  This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The claim also was raised in Petitioner's petition for review in the California Supreme Court, which summarily denied the petition. As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Wilson, 138 S. Ct. at 1192.

  In denying the instructional error claim regarding CALCRIM No. 376, the California Court of Appeal stated:

> The jury was instructed with CALCRIM No. 376, as follows:
>
>> "If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of Carjacking, charged in Count One or Robbery, charged in Count Two based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed Carjacking or Robbery.
>>
>> "The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of.
>>
>> "Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt."
>
> The jury was also given standard instructions on the elements of carjacking (CALCRIM No. 1650) and robbery (CALCRIM No. 1600).
>
> Appellant contends CALCRIM No. 376 created a "legally erroneous" "alternate theory of guilt" for both carjacking and robbery. He argues the instruction allowed the jury to find appellant guilty of carjacking and robbery based upon finding only what he contends are two "elements": (1) that appellant knowingly possessed stolen property; and (2) that there existed other "supporting evidence" that tended to connect appellant to the crimes. Appellant reasons the phrase in the last sentence of CALCRIM No. 376—"each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt"—is reasonably interpreted as referring to the two "elements" appellant contends are described in CALCRIM No. 376, not the elements provided in the robbery and carjacking instructions. Therefore, as appellant claims, the instruction creates a "stand-alone theory of guilty—complete with required elements and a burden of proof." According to appellant, this allowed the jury to convict appellant of carjacking and robbery without finding each element of each offense as instructed in CALCRIM Nos. 1650 and 1600 true beyond a reasonable doubt in violation of his Fourteenth Amendment right to due process.

> We need not address the merits of appellant's contention because we conclude any error is clearly harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Aledamat* (2019) 8 Cal.5th 1, 11–13.)
>
> Appellant contends the alleged error contributed to the jury's verdict primarily based on his assertion that T.R.'s testimony "did not likely provide proof beyond a reasonable doubt that appellant committed the offenses," but "did provide slight 'supporting evidence' beyond a reasonable doubt that tended to prove appellant's guilt." To support this contention, he points out that T.R.'s testimony was inconsistent and "significantly impeached" and argues a "reasonable juror would not likely find T.R.'s testimony proved beyond a reasonable doubt that appellant committed the robbery and carjacking." Appellant posits for these reasons, "the jury was far more likely to use CALCRIM No. 376, which allowed the jury to convict based on 'slight' evidence, than it was to use CALCRIM Nos. 1600 and 1650, which required proof of the statutory elements beyond a reasonable doubt."
>
> Appellant's argument is belied by the jury's verdict. The jury found unanimously, beyond a reasonable doubt, under properly given instructions not challenged by appellant, both that appellant was guilty of assault with a firearm and that the allegations he personally used a firearm during the commissions of all charged offenses were true. As the only evidence of appellant using a firearm was T.R.'s testimony, the jury clearly found her testimony sufficient to make these findings. It is therefore highly improbable the jury did not find her testimony sufficient to support their findings on the carjacking and robbery charges beyond a reasonable doubt.
>
> Further, because of the way the evidence was presented at trial, if the jury found unanimously, beyond a reasonable doubt, appellant was the individual wielding the firearm at the crime, it would have been unreasonable for them not to find the individual statutory elements of carjacking and robbery true beyond a reasonable doubt. The primary issue at trial was identity; it was undisputed that P.G.'s vehicle and T.R.'s belongings were taken from them against their will. No evidence or theory was presented to the jury that appellant committed assault with a firearm but did not commit the robbery or carjacking. Rather, the only scenario presented to the jury by the prosecution was that appellant used the firearm to effectuate the carjacking and robbery, and appellant's defense was that he was not the perpetrator of any of the crimes and was not even present at the time and place of the crimes. In other words, if the jury found beyond a reasonable doubt appellant was guilty of assault with a firearm and the firearm enhancements, as they did here, they clearly found beyond a reasonable doubt he was guilty of the carjacking and robbery because, on the facts presented, the crimes were intertwined. If the jury had not been instructed with CALCRIM No. 376, there is no reasonable doubt their verdict would be the same as it was. Any alleged error was harmless.

Allen, 2021 WL 1113263, at *2–4.

Applying Chapman v. California, 386 U.S. 18 (1967), the California Court of Appeal found that any error in instructing the jury with CALCRIM No. 376 was harmless. Under Chapman, "the test for determining whether a constitutional error is harmless . . . is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict

8

1  obtained.'" Neder v. United States, 527 U.S. 1, 15 (1999) (quoting Chapman, 386 U.S. at 24).
2  The Supreme Court has held that when a state court's "Chapman decision is reviewed under
3  AEDPA, 'a federal court may not award habeas relief under § 2254 unless *the harmlessness*
4  *determination itself* was unreasonable.'" Davis v. Ayala, 576 U.S. 257, 269 (2015) (quoting Fry
5  v. Pliler, 551 U.S. 112, 119 (2007)). That is, Petitioner must show that the state court's harmless
6  error determination "was so lacking in justification that there was an error well understood and
7  comprehended in existing law beyond any possibility of fairminded disagreement." Ayala, 576
8  U.S. at 269–70 (internal quotation marks omitted) (quoting Richter, 562 U.S. at 103).

9        The prosecutor's sole theory of the case, as articulated in the closing argument, was that
10  Petitioner used a handgun to effectuate a carjacking and robbery, (5 RT 1246–52), describing
11  "the purpose of the handgun" as "[t]he instrumentality of a carjacking and the robbery," (5 RT
12  1251). The principal issue at trial was identity, and Petitioner's defense was that he was not the
13  perpetrator of the offenses and was not present when the offenses took place. (5 RT 1296–97).
14  Given that the jury found Petitioner guilty beyond a reasonable doubt of assault with a firearm
15  and the firearm enhancements under instructions not challenged by Petitioner and based solely
16  on T.R.'s testimony, and in light of the interwoven nature of the carjacking and robbery with the
17  firearms charges, the state court's harmless error determination was not contrary to, or an
18  unreasonable application of, clearly established federal law, nor was it based on an unreasonable
19  determination of fact. The decision was not "so lacking in justification that there was an error
20  well understood and comprehended in existing law beyond any possibility for fairminded
21  disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief
22  on his first claim, and it should be denied.

23        **B. Failure to Instruct on Receiving Stolen Property**

24        In his second claim for relief, Petitioner asserts that the trial court erroneously refused to
25  instruct the jury on receiving stolen property. (ECF No. 1 at 7). Respondent argues that the state
26  court's rejection of this claim was reasonable. (ECF No. 12 at 8–9).

27        This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate
28  District, which denied the claim in a reasoned decision. The claim also was raised in Petitioner's

petition for review in the California Supreme Court, which summarily denied the petition. As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Wilson, 138 S. Ct. at 1192.

In denying the instructional error claim regarding receiving stolen property, the California Court of Appeal stated:

> Appellant contends the trial court erred when it "refused" to instruct the jury on the lesser related offense of receiving stolen property in violation of appellant's Sixth and Fourteenth Amendment rights to present a complete defense.[5] Appellant contends the instruction was paramount to the defense theory of his case, which was that he was not present at the time of the carjacking and robbery and "was potentially guilty only of the uncharged crime of receiving stolen property."
>
> Appellant provides no authority directly supporting his claim that his right to present a defense was implicated by the court's failure to instruct on the crime of receiving stolen property. Rather, he acknowledges that an argument substantively similar to his has been rejected by the appellate court in *People v. Valentine* (2006) 143 Cal.App.4th 1383 (*Valentine*), which he encourages this court not to follow.
>
> The defendant in *Valentine* was charged with robbery, but argued the evidence at trial showed he committed the uncharged crime of receiving stolen property. The defendant unsuccessfully urged the trial court to instruct on the uncharged offense in hopes that he could convince the jury he committed the uncharged offense, and they would acquit him of robbery. (*Valentine, supra*, 143 Cal.App.4th at pp. 1385, 1387.) On appeal, the defendant maintained he was entitled to the requested instruction as an explanation of his defense theory that he received stolen property but did not steal it. (*Id.* at p. 1387.) While the defendant acknowledged Supreme Court precedent precluded him from an instruction on the lesser related offense to argue for conviction of the lesser related offense rather than the charged offense, the defendant requested the lesser related instruction so that he could argue for outright *acquittal*. (*Id.* at p. 1388.) The court rejected this argument reasoning it would turn the precedent "on its head" and explained the commission of a lesser related offense is not a true defense to the charged offense and, therefore, the lack of an instruction did not impinge on the defendant's right to present a defense. (*Id.* at pp. 1387–1388.) Rather, "[i]t simply reflected the fact that the prosecutor chose not to file on the other charge." (*Id.* at p. 1388.) The court stated its decision did

---

[5] At a jury instruction conference, the court addressed defense counsel stating, "there were no requests for any type of lessers. Is that still your position?"
  The following colloquy occurred:
    "[DEFENSE COUNSEL]: I probably would ask for an instruction on receiving stolen property.
    "THE COURT: What would it be a lesser of?
    "[DEFENSE COUNSEL]: I guess not robbery, so I'll leave it at that.
    "THE COURT: Okay."
  The parties disagree over whether appellant withdrew his request for the instruction based on the above. While it is clear the trial court interpreted defense counsel's statement as a withdrawal of the request, which we agree was reasonable, we address the merits of appellant's claims because he asserts the trial court had a sua sponte duty to give the instruction and that the error was of a constitutional magnitude.

not preclude the defendant from arguing to the jury that his culpability was as one who was in possession of stolen property but not as one who committed a robbery. (*Ibid.*)

Appellant contends the *Valentine* rule is "unworkable," stating that under *Valentine*, "counsel can present a lesser related offense defense, but the jury should never be instructed how to interpret that defense," rendering "counsel's right to present the defense to the jury... meaningless." Appellant has not convinced us to diverge from our colleagues' holding in *Valentine*. First, we note appellant's frequent use of the word "defense" indicates he misreads *Valentine*. The court in *Valentine* expressly said, "the offense of receiving stolen property is not a *defense* to robbery; rather, it is a theory of criminal liability based on a different offense." (*Valentine, supra*, 143 Cal.App.4th at p. 1388; cited with approval in *People v. Jennings* (2010) 50 Cal.4th 616, 668.) We agree with *Valentine* that the commission of an uncharged offense is not a true defense to the charged crime when the commission of the lesser related offense does not necessarily negate an element of the charged offense. (See *Valentine*, at p. 1388.)

Further, just because the jury was not instructed on the elements of a lesser related offense, does not, as the court in *Valentine* clearly states, preclude a defendant from arguing the elements of the charged offense were not proven. Here, defense counsel did so thoroughly.

Appellant's defense was he was not the perpetrator of, nor present during, the commission of the charged crimes. Defense counsel hammered this concept to the jury by: (1) arguing there was no independent evidence presented such as phone calls or text messages showing any connection between appellant and Whitehead; (2) pointing out inconsistencies in Xiong's report and Xiong's failure to follow up with appellant's alibi witnesses; and (3) attacking the inconsistencies in T.R.'s testimony and description of the perpetrators. Defense counsel characterized the case as one of "faulty identification." To explain appellant's possession of the vehicle, defense counsel highlighted appellant's statement that he had borrowed it from another individual. Defense counsel then told the jury: "Now, if you believe that [appellant] at that point knew or reasonably should have known that the car was stolen, that's possession of stolen property ... and that's not charged." Defense counsel went on to further highlight there was no evidence of a connection between appellant and Whitehead or the offense.

In context of defense counsel's argument on the whole, by arguing appellant was merely guilty of receiving stolen property, defense counsel was underlining to the jury that, under the defense theory of the case, just because appellant possessed the stolen property the day following the crimes, did not mean he was the perpetrator of the crimes. The jury would reasonably understand from defense counsel's argument that if they accepted appellant's version of events, the proper verdict would be not guilty even though he perhaps was guilty of an uncharged offense by being in possession of the vehicle. This concept was clear, and the jury did not need to be instructed on the elements of receiving stolen property to understand the thrust of appellant's defense.

As stated, we find no reason not to follow *Valentine*, under which appellant's claim fails. In addition, we do not otherwise find the failure to instruct on receiving stolen property implicated appellant's federal Sixth and Fourteenth Amendment rights to a meaningful opportunity to present a complete defense and to adequate instructions on the defense theory of the case. There is no federal constitutional right of a defendant to compel the giving of lesser-related-offense

      instructions. (*People v. Birks* (1998) 19 Cal.4th 108, 124.) Further, there is no basis to conclude the failure to instruct on receiving stolen property resulted in a fundamentally unfair trial. (See *People v. Rundle* (2008) 43 Cal.4th 76, 148 [the absence of lesser related instruction did not prevent the defendant from presenting his version of events, or from arguing to the jury that he was not guilty of the charged crime such that it could be concluded his trial was fundamentally unfair].)

Allen, 2021 WL 1113263, at *4–5 (footnote in original).

      To the extent that Petitioner asserts the state trial court violated due process by refusing to instruct the jury on receiving stolen property as a lesser related offense to robbery, the Court finds that Petitioner is not entitled to habeas relief. Beck v. Alabama, 447 U.S. 625 (1980), held that due process is violated in a capital case "when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." 447 U.S. at 627. The Supreme Court in Beck expressly declined to determine whether due process requires giving a lesser included offense instruction in noncapital cases. Id. at 638 n.14. The Ninth Circuit has declined to extend Beck to noncapital cases, Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (per curiam), and has recognized that "[t]here is no Supreme Court precedent establishing that a state trial court is required to instruct on lesser included offenses in noncapital cases," Bortis v. Swarthout, 672 F. App'x 754, 754 (9th Cir.), cert. denied sub nom. Bortis v. Arnold, 137 S. Ct. 1605 (2017). In Hopkins v. Reeves, 524 U.S. 88 (1998), the Supreme Court "consider[ed] whether *Beck* requires state trial courts to instruct juries on offenses that are not lesser included offenses of the charged crime under State law," and "conclude[d] that such instructions are not constitutionally required." Hopkins, 524 U.S. at 90–91. The habeas petitioner in Hopkins had been convicted of felony murder and asserted that the trial court's refusal to issue instructions on second-degree murder and manslaughter, which were not lesser included offenses of felony murder under state law, was unconstitutional under Beck. Id. at 93, 95. In rejecting the habeas petitioner's claim, the Supreme Court stated:

      Almost all States. . . provide instructions only on those offenses that have been deemed to constitute lesser included offenses of the charged crime. We have never suggested that the Constitution requires anything more. The Court of Appeals in this case, however, required in effect that States create lesser included offenses to all capital crimes, by requiring that an instruction be given on some *other* offense--what could be called a "lesser

> related offense"--when no lesser included offense exists. Such a requirement is not only unprecedented, but also unworkable. Under such a scheme, there would be no basis for determining the offenses for which instructions are warranted. The Court of Appeals apparently would recognize a constitutional right to an instruction on any offense that bears a resemblance to the charged crime and is supported by the evidence. Such an affirmative obligation is unquestionably a greater limitation on a State's prerogative to structure its criminal law than is *Beck*'s rule that a State may not erect a capital-specific, artificial barrier to the provision of instructions on offenses that actually are lesser included offenses under state law.

Hopkins, 524 U.S. at 96–98 (citations and footnote omitted). Accordingly, the state court's denial of Petitioner's instructional error claim regarding receiving stolen property as a lesser related offense was not contrary to, or an unreasonable application of, clearly established federal law. See Gonzalez v. Runnels, 395 F. App'x 481, 481–82 (9th Cir. 2010) (holding that state court's denial of habeas petitioner's claim "that his due process rights were violated when the trial court declined to instruct the jury on the lesser related offense of grossly negligent discharge of a firearm" was "foreclosed by *Hopkins*" and "not an unreasonable application of clearly established federal law" because "the state was not required to provide instructions on lesser related offenses").

To the extent that Petitioner asserts the state court violated his right to present a complete defense by refusing to instruct the jury on receiving stolen property, the Court finds that Petitioner is not entitled to habeas relief. "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). Although as a matter of federal criminal procedure the Supreme Court has stated that "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor," Mathews v. United States, 485 U.S. 58, 63 (1988),[6] the Supreme Court has noted that "the cases in which we have invoked th[e] principle [of a criminal

---

[6] Mathews concerned "whether a defendant in a federal criminal prosecution who denies commission of the crime may nonetheless have the jury instructed, where the evidence warrants, on the affirmative defense of entrapment." 485 U.S. at 59. Both the majority and dissent recognized that the issue was "not of 'constitutional dimension.'" Id. at 66 (quoting United States v. Russell, 411 U.S. 423, 433 (1973)); accord Mathews, 485 U.S. at 60 (White, J., dissenting) ("The Court properly recognizes that its result is not compelled by the Constitution.").

13

defendant's right to present a complete defense] dealt with the exclusion of evidence or the testimony of defense witnesses" and did not "involve[] restrictions imposed on a defendant's ability to present an affirmative defense," Gilmore v. Taylor, 508 U.S. 333, 343–44 (1993) (citations omitted). Accordingly, the state court's denial of Petitioner's receiving stolen property instructional error claim as violating his right to present a complete defense was not contrary to, or an unreasonable application of, clearly established federal law. See Carey v. Musladin, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue] . . . involved here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" (first alteration added) (quoting 28 U.S.C. § 2254(d)(1)); Marquez v. Gentry, 708 F. App'x 924, 925 (9th Cir. 2018) (affirming denial of claim that refusal to give an insanity instruction violated due process because "the extent of the right to present a 'complete defense' under federal law does not extend to 'restrictions imposed on a defendant's ability to present an affirmative defense,' but only the 'exclusion of evidence' and the 'testimony of defense witnesses'" (quoting Gilmore, 508 U.S. at 343–44)).

      Moreover, even if the failure to give a receiving stolen property instruction did implicate Petitioner's right to present a complete defense and the trial court erred in failing to give the instruction in Petitioner's case,[7] the Court finds that any error was harmless because the error did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637. The lack of a receiving stolen property instruction did not prevent Petitioner from presenting his defense that he was not the perpetrator of the offenses and was not even present during the commission of the crimes. Counsel argued to the jury that there was no evidence connecting Petitioner with Whitehead, emphasized the inconsistencies in T.R.'s testimony and her descriptions of the perpetrators, and highlighted the inconsistencies in the

---

[7] The Court notes that there are Ninth Circuit cases applying AEDPA and holding that "[f]ailure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable." Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir. 2009) (internal quotation marks omitted) (quoting Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004)). See also Bradley v. Duncan, 315 F.3d 1091, 1099 (9th Cir. 2002) (noting that a "state court's failure to correctly instruct the jury on the defense may deprive the defendant of his due process right to present a defense . . . because the right to present a defense 'would be empty if it did not entail the further right to an instruction that allowed the jury to consider the defense'" (quoting Tyson v. Trigg, 50 F.3d 436, 448 (7th Cir. 1997))).

detective's report in addition to the detective's failure to follow up with Petitioner's alibi witnesses. Defense counsel specifically stated,

> And, ladies and gentlemen, that was something that Mr. Allen addressed in his statement to Detective Xiong. "I went up and borrowed the car." And I said, "Hey, this isn't stolen or anything, is it?" The guy says no and he hops in.
>
> Now, if you believe that Mr. Allen at that point knew or reasonably should have known that the car was stolen, that's possession of stolen property. There's no -- and that's not charged.

(5 RT 1295–96). The jury was presented with evidence and arguments of Petitioner's defense theory and was instructed regarding the various charges the prosecutor elected to bring against Petitioner. As noted by the California Court of Appeal,

> The jury would reasonably understand from defense counsel's argument that if they accepted [Petitioner]'s version of events, the proper verdict would be not guilty even though he perhaps was guilty of an uncharged offense by being in possession of the vehicle. This concept was clear, and the jury did not need to be instructed on the elements of receiving stolen property to understand the thrust of [Petitioner]'s defense.

Allen, 2021 WL 1113263, at *5.

Based on the foregoing, the state court's denial of Petitioner's instructional error claim with respect to receiving stolen property was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his second claim, and it should be denied.

## V.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 3, 2022**           /s/ Erica P. Grosjean
                                   UNITED STATES MAGISTRATE JUDGE